IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIETRICK S. COOKE, | ) | CASE NO. 1:21-CV-2283 |
| | ) | |
| Petitioner, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| DOUGLAS FENDER, Warden | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Respondent. | ) | |

## I.      INTRODUCTION

Petitioner, Dietrick S. Cooke ("Mr. Cooke"), seeks a writ of habeas corpus under 28 U.S.C.

§ 2254. (ECF No. 1). Mr. Cooke pled guilty to voluntary manslaughter after a Rule 11 colloquy.

The remaining charges of murder and felonious assault were dismissed. The trial court

subsequently sentenced Mr. Cooke to the maximum sentence of 11 years in prison.

Mr. Cooke asserts four grounds for relief. This matter was referred to me under Local Rule

72.2 to prepare a report and recommendation on Mr. Cooke's petition. For the reasons set forth

below, I RECOMMEND that the Court DISMISS and/or DENY Mr. Cooke's petition. I further

recommend that the Court not grant Mr. Cooke a certificate of appealability.  Finally, I recommend

that Misty Mackey, the Warden of Lake Erie Correctional Institution, should be substituted for

Douglas Fender as the Respondent in this case.[1]

---

[1] Douglas Fender was previously the Warden of Lake Erie Correctional Institution, where Mr. Cooke is incarcerated. Misty Mackey, however, is now Warden of that facility. *See* https://drc.ohio.gov/about/facilities/lake-erie-correctional (last visited on Apr. 16, 2024). Thus, Warden Misty Mackey should be substituted as the proper respondent in this

## II.     RELEVANT FACTUAL BACKGROUND

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *see also Spagnola v. Horton*, No. 17-1462, 2017 WL 8948745, at *2 (6th Cir. 2017). The Ohio Court of Appeals for the Eighth District set forth the following facts on direct appeal:

{¶ 3} Cooke was indicted in February 2018, on three counts, including Count 1, murder in violation of R.C. 2903.02(B), an unclassified felony; Count 2, felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony; and Count 3, voluntary manslaughter in violation of R.C. 2903.03(A), a first-degree felony.

{¶ 4} The charges arose after the victim in this case, Perry Porter, went to the home of his ex-girlfriend, Lekisha Ross, on February 16, 2018, to confront her after she had gotten back together with Cooke. Cooke was at Ross's home when Porter arrived. Ross answered the door when Porter knocked, and Porter pushed his way into Ross's home. When Porter saw Cooke, a fight ensued. Cooke proceeded to beat Porter until he was unconscious in the dining room of the home. Ross's three minor children witnessed the beating. When Cooke stopped beating Porter, Cooke and Ross's nephew put Porter in the backyard and called police. Porter was later pronounced dead at the hospital.

{¶ 5} Trial began on the case on May 29, 2019. Before the second day of the trial began, Cooke withdrew his former plea of not guilty and pleaded guilty to Count 3 as charged. As part of the plea deal, the remaining counts were nolled.

{¶ 6} At the plea hearing, the state informed the court:

We are in agreement that the defendant should receive consideration by the court at the time of sentencing, one, for taking responsibility here, and, two, for taking responsibility and relieving these children of not having to come into court and testify about the events that they witnessed as well. And that those factors will be outlined in our sentencing memorandum to be considered by the court at that time.

{¶ 7} The state further told the court that no other threats or promises had been made to Cooke other than what was placed on the record.

---

case. *See* 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained."); Fed. R. Civ. P. 25(d) (providing that, "when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending[,]" "[t]he officer's successor is automatically substituted as a party.").

{¶ 8} Defense counsel stated that he agreed with what the state placed on the record. Defense counsel further indicated that he had reviewed Cooke's "trial rights once more," and that Cooke understood them and "was of sound mind."

{¶ 9} Cooke stated that he understood and agreed with what the state and his defense counsel placed on the record. Cooke further told the court in response to its questioning that he was 41 years old, attended "secondary" education, did not have problems reading and writing, was not on probation or parole, did not have any unresolved arrests, was not currently under the influence of drugs or alcohol, was a United States citizen, and was satisfied with his defense counsel's representation. Cooke also told the court that no one threatened or promised him anything that was not placed on the record at the plea hearing and that no one forced him to enter into the plea.

{¶ 10} The trial court then reviewed Cooke's constitutional rights with him and made sure that he understood them and understood that he was waiving those rights by entering into the plea.

{¶ 11} The trial court further explained the potential penalties, including the maximum sentence and fines that were involved with a first-degree felony as well as the duration of postrelease control that he would be subject to and the ramifications for violating it. Additionally, the trial court notified Cooke that he would need to register as a violent offender with the county sheriff once per year for ten years.

{¶ 12} The court then asked Cooke if he understood that the court was not promising to sentence him to any particular sentence and that it could proceed to sentencing immediately after the plea hearing. Cooke stated that he understood.

{¶ 13} Near the end of the colloquy, Cooke pleaded guilty to Count 3, voluntary manslaughter. The court then asked Cooke:

> And, sir, are you in fact guilty, is it true that on or about February 16, 2018, in Cuyahoga County, Ohio, that while under the influence of sudden passion or in a sudden fit of rage, either of which was brought on by serious provocation occasioned by the victim that was reasonably sufficient to incite you into using deadly force, that you did knowingly cause the death of [the victim]?

{¶ 14} Cooke told the court that he was guilty of voluntary manslaughter. Subsequently, the court found that Cooke's plea was knowing, voluntary, and intelligent, accepted Cooke's guilty plea, and found him guilty of voluntary manslaughter. The court also dismissed Counts 1 and 2 at the state's request. Defense counsel and the state told the court that it had complied with Crim.R. 11. The court then referred Cooke for a presentence investigation report and set a date for the sentencing hearing.

{¶ 15} At the sentencing hearing, the court indicated that it had reviewed the presentence investigation report. Defense counsel stated that he did not have anything to add or delete from the report.

3

{¶ 16} Defense counsel then explained the events that led to the charges in this case. According to defense counsel:

> This matter * * * arose from an incident on February 16th, 2018, when the decedent, Perry Porter, forced his way into the residence of Lakisha Ross at 10:30 p.m. Mr. Cooke and Ms. Ross were in bed when they heard a knocking at the window. Ms. Ross got up to determine what was going on, and Mr. Porter was at the door. Ms. Ross states that she opened the door just enough to tell Mr. Porter that she would bring his personal belongings to him the next day. And Mr. Porter stuck his foot in the door so that she could not close it, then forced his way into the home, demanding, "Who's in here? Who's in here?"

> He pushed Ms. Ross out of the way, and as he approached the bedroom, Mr. Cooke appeared, and Mr. Porter struck him, and they began fighting. First, one on top, and then the other.

> The court docket shows that Mr. Porter has had three cases involving felonious assault, two with firearm specifications, one case was dismissed when the victim didn't show up for trial.

> Against that background, Mr. Cooke, through his association with Ms. Ross and other family members, had learned that the decedent was jealous, controlling, abusive, and was known to carry a firearm.

> So it was understandable that Mr. Cooke was terrified when Mr. Porter forced his way into the residence and struck him. And in that state of mind, fought with the intruder with all of his strength to overcome him, so that he and other members of the household would not be harmed.

> While it's true that Mr. Cooke had been told by Mr. Porter at least two times, Mr. Cooke would have testified at trial that if Mr. Porter continued to attempt to kick him between his legs during the fight, and that is why he continued to defend himself from injury to Mr. Porter.

> Now, Ms. Ross and her family members would have testified at trial that Mr. Porter, after being subdued, appeared to be snoring. And Mr. Cooke, with the assistance of Ms. Ross's nephew, Robert Ross, who is 23 years old, grabbed Mr. Porter and dragged him into the back yard immediately after telephoning the police and notified them of the intrusion.

> Your Honor, my client is regretful, and we're all sad, of course, about Mr. Porter losing his life. He was pronounced dead at the hospital some 15 or 20 minutes later. Now, importantly, Mr. Cooke, in fear of his life, exercised his right to a self-defense of others and defense of property during the altercation of Mr. Porter. He deeply regrets the fact that this struggle resulted in the death of Mr. Porter.

4

{¶ 17} Cooke's mother and sister also spoke to the court. Both expressed remorse to the victim's family. Cooke's sister told the court that Cooke informed their family that he wanted them "to be aware if something were to happen to him, that there was conflict going on between" he and the victim. Cooke's sister stated that Cooke "was genuinely in fear of his life, and he did what he had to do to protect himself." Cooke's mother told the court that Cooke was not perfect, but that he had a "good heart." She asked for leniency because Cooke "did not initiate this incident."

{¶ 18} Cooke also expressed remorse to the victim's family. He stated that he never intended to harm anyone. But Cooke explained that the victim "was hunting" him and Cooke feared the victim. Cooke stated that both he and the victim "played a part in this." Cooke asked for the trial court to "show some mercy" to him.

{¶ 19} The state began by showing the court photos of the victim taken before and after his death. The state also showed the court photos of "a pool of the blood" that Porter had lain in when he was "thrown out of the house like a piece of trash" as well as photos of blood splatter from the room where Cooke killed him. The state pointed out that all of the splatter was lower than three feet on the wall, which experts would have testified at trial showed "that all of the injuries that caused that blood spatter were inflicted when Mr. Porter was helpless on the ground being beaten by the defendant." The state further told the court:

> The most cooperative witness in this case was Robert Ross. He was the nephew of Lakisha, kind of the apex of this whole situation. He indicated to the police that he tried to pull the defendant off of the victim on three separate times during this altercation, and the defendant just kept going, and he kept hitting him, and he kept striking the victim until he lost consciousness. The defense has stood here today and smeared -- tried to smear the victim and indicate that the he instilled fear in them. At the time of his death, Perry Porter was 5'6" and 137 pounds. In eight days prior to his death, Perry Porter was the one inside of the home at Oriole Avenue with Ross. He and Lakisha Ross called the police at the first sign that the defendant showed up at that residence, eight days prior to dying. Euclid police showed up, and they took the defendant from that location. And then eight days later, when Perry arrived, no one called the police to say there's an intruder outside knocking at the window or through the kitchen, where an argument ensues. Nobody called the police until he had been shoved outside of the house after he was unconscious.

> They were less than forthcoming on the phone to 911, pretending they don't know who Perry Porter was at first. It was – they were not forthcoming, other than [Robert] Ross.

> I've outlined the defendant's criminal history. He stood here today and said, gee, the victim was known to carry a gun. The defendant is the one who has prior conviction for having weapons under disability; the defendant is the one who has the prior conviction for taking someone's life. Your Honor, this is the second time he is before this court.

The plea offer in the case and what the defendant pled to reflects the mitigatory factors of this circumstance, but in no means diminishes the seriousness of the offense.

{¶ 20} The court indicated that it read the sentencing memorandums and the letters from the victim's family.

{¶ 21} The victim's two sisters spoke to the court. They both expressed that they missed their brother. Both of them also blamed Lakisha Ross. The victim's mother stated that nothing would bring her son back. She asked the court to consider the fact that Cooke beat her son "without mercy" and that he could have stopped, but he did not. The victim's mother further stated that Cooke then threw her son "outside like a piece of trash." The victim's mother said that Lakisha Ross was "a factor in everything" and ruined her life, her family's life, and Cooke's life.

{¶ 22} The court stated that it considered all of the information before it, the principles and purposes of sentencing, and the seriousness and recidivism factors. The court then explained:

> This case is particularly troubling in that, however, Mr. Porter entered the home, at some point the beating became much more than self-defense. And I don't know where this idea of self-defense comes, just because somebody may strike first. Striking back is retaliation for being struck. And this is a prime example of when enough should have been enough, and you should have stopped. The first thing before getting out of the bed should have been to call the police. That should have been the first thing. Being cooperative with the police and telling the truth, that would have been the next thing.

> However, inflicting a beating on a person on the ground, 21 separate injuries to Mr. Porter's head alone; multiple contusions; lacerations and hemorrhages; broken and missing teeth; five separate injuries to his neck; three separate fractures; eight separate injuries to his trunk; and his spine broken in two places; multiple rib fractures; lacerations to his heart, his liver and his right kidney indicate the level of your passion as you pled to, which was pure anger.

> Your criminal history indicates that this is not a new thing for you. You have at least five prior violent convictions; two prior weapon convictions, including your participation in a crime that was resulted in someone's death. Now it's happened again.

{¶ 23} The trial court sentenced Cooke to the maximum of 11 years in prison for voluntary manslaughter. It further notified Cooke that he would be subject to a mandatory period of five years of postrelease control upon his release from prison and the ramifications for violating it. The court also advised him that he would need to register as a violent offender annually for ten years. The court did not impose any fines but ordered Cooke to pay costs. It is from this judgment that Cooke now appeals.

*State v. Cooke,* 2020-Ohio-2725, 2020 WL 2079190, ¶¶ 3-23 (8th Dist. Apr. 30, 2020).

### III.    RELEVANT PROCEDURAL HISTORY

#### A.    <u>Trial Court Proceedings</u>

On February 28, 2018,  Mr. Cooke was indicted in the Cuyahoga County Court of Common Pleas for the following offenses: (1) murder (Count 1); Felonious Assault (Count 2); and voluntary manslaughter (Count 3.) (ECF No. 5-1, Exhibit 1.)

Prior to trial, Mr. Cooke filed multiple extensions to continue the case to allow his attorney to conduct an investigation. (ECF No. 5-1, Exhibits 3-11.) On July 11, 2019, Mr. Cooke moved to disqualify his counsel. (ECF No. 5-1, Exhibit 14.) The trial court granted the motion and appointed new counsel. (ECF No. 5-2, PageID # 308-09.) On March 31, 2019, Mr. Cooke moved to dismiss all three charges, arguing that he acted in self-defense. (ECF No. 5-2, Exhibit 15.) The State opposed the motion on April 26, 2019. (ECF No. 5-2, Exhibit 16.)

On May 29, 2019 – before voir dire began – the trial court held a non-evidentiary hearing and denied Mr. Cooke's motion to dismiss the indictment. (ECF No. 5-2, PageID # 327-28.) The trial court denied the motion, holding that it was untimely and premature because Mr. Cooke's argument was dependent upon the facts and circumstances surrounding what occurred during the alleged crime and could only be decided after the evidence was presented. (*Id.*)

The next day – May 30, 2019 – the parties announced they had reached a negotiated plea agreement, and Mr. Cooke entered a negotiated plea of guilty to voluntary manslaughter (Count 3) after a Rule 11 colloquy. Count 1 (murder) and Count 2 (felonious assault) were dismissed. (*Id.*) The prosecutor advised Mr. Cooke at the change of plea hearing that the potential prison term, though not mandatory, was three to 11 years and up to a $20,000 fine. (ECF No. 5-2, PageID # 56.) In response to the trial court's inquiry, Mr. Cooke indicated that he understood all the terms

of the plea deal. (ECF No. 5-2, PageID # 457-58.) The trial court again advised Mr. Cooke that the maximum sentence under the plea agreement was 11 years in prison and a fine of up to $20,000. (ECF No. 5-2, PageID # 461.) The trial court – after finding that Mr. Cooke had knowingly, voluntary, and with a full understanding of his rights entered his guilty plea – accepted the plea and found Mr. Cooke guilty. (ECF No. 5-2, PageID # 465.) Counsel for Mr. Cooke and the State both agreed on the record that the trial court had complied with Criminal Rule 11. (*Id.*)

The sentencing hearing took place on June 27, 2019. After hearing testimony from the families of both Mr. Porter and Mr. Cooke, the trial court sentenced Mr. Cooke to 11 years in prison – the maximum sentence under the plea agreement – on the voluntary manslaughter charge.[2] (*See* ECF No. 5-1, Exhibit 18.)

## B. Direct Appeal

Mr. Cooke, through counsel, timely filed his notice of appeal to the Eighth District Court of Appeals on July 18, 2019. (ECF No. 5-1, Exhibit 19.)

On November 15, 2019, Mr. Cooke, through counsel, raised the following assignments of error on direct appeal:

1. Appellant's plea was not knowing, intelligent or voluntary where he was not informed that a guilty plea waived his right to assert self-defense and his plea was induced by the parties' agreement that the court would consider two mitigating factors when imposing sentence that the court then failed to consider prior to imposing the maximum sentence.

2. Appellant's constitutional rights were violated when the charges were not dismissed when he was not afforded a speedy trial.

3. The trial court erred by denying Appellant's motion to dismiss based upon self-defense.

4. The eleven-year prison term is contrary to law and is clearly and convincingly not supported by the record.

---

[2] The July 1, 2019, Journal Entry was filed to correct a typographical error and reflect that Mr. Cooke was sentenced to a term of 11 years – not 11 months – as stated in the Journal Entry dated June 28, 2019. (*See* ECF No. 5-1, Exhibit 18; ECF No. 5-1, Exhibit 17.)

(ECF No. 5-1, Exhibit 20.)  On August 30, 2020, the Eighth District Court of Appeals affirmed the trial court's judgment. (ECF No. 5-1, Exhibit 22.)

### C.  Ohio Supreme Court

Mr. Cooke, acting pro se, filed a notice of appeal and memorandum in support of jurisdictions on June 3, 2020.  (ECF No. 5-1, Exhibit 23, 24).  He asserted the same four propositions of law that he previously presented to the Eighth District Court of Appeals:

1.  Appellant's plea was not knowing, intelligent or voluntary where he was not informed that a guilty plea waived his right to assert self-defense and his plea was induced by the parties' agreement that the court would consider two mitigating factors when imposing sentence that the court then failed to consider prior to imposing the maximum sentence.

2.  Appellant's constitutional rights were violated when the charges were not dismissed when he was not afforded a speedy trial.

3.  The trial court erred by denying Appellant's motion to dismiss based upon self-defense.

4.  The eleven-year prison term is contrary to law and is clearly and convincingly not supported by the record.

On September 1, 2020, the Supreme Court declined to accept jurisdiction of the appeal pursuant to S. Ct. Prac.R. 7.08(B)(4). (ECF No. 5-1, Exhibit 25.)

### D.  Federal Habeas Petition

On December 3, 2021, Mr. Cooke, acting pro se, filed his federal habeas petition. (ECF No. 1.) He raises the following four grounds for relief:[3]

**Ground One**:  Petitioner's plea was not knowingly, voluntarily, and intelligently given where he was not informed that a guilty plea waived his right to assert self-defense.

**Supporting Facts**:  The Due Process Clause of the United States Constitution requires that pleas of guilty be both knowingly and voluntary. Parke v. Raley, 506 U.S. 20, 113 S. Ct. 517, 523 (1992). Failure on either of these points renders enforcement of the plea unconstitutional. State v. Engle, 74 Ohio St.3d 525. Petitioner was prejudiced by the incomplete information regarding the application

---

[3] The grounds for relief are set forth verbatim.

of the castle doctrine and self-defense; as well as the failure to advise him that a guilty plea waived this affirmative defense.

**Ground Two**: Petitioner's constitutional rights were violated when the charges were not dismissed when Petitioner was not afforded a speedy trial.

> **Supporting Facts**: The right to a speedy trial is a fundamental right of a criminal defendant that is guaranteed by the United States and Ohio constitutions. State v. Ramsey, 132 Ohio St.3d 309, 2012-Ohio-2904. The record establishes a prima facie case for discharge because Petitioner was in custody beginning February 17, 2018, he was indicted on February 28, 2018 but the trial did not commence until May 29, 2019. The triple count provisions apply and more than 90 days elapsed before trial – 466 days had passed.

**Ground Three**: The trial court erred by denying Petitioner's motion to dismiss based upon self-defense.

> **Supporting Facts**: Petitioner, through counsel, filed a pre-trial motion to dismiss predicated upon O.R.C. Section 2905.01(B) and arguing his actions were justified by self-defense. The trial court held a non-evidentiary hearing on the motion and found it was untimely or premature. Petitioner asserts that the statute pursuant to R.C. 2905.01(B)(2) could allow for a pre-trial determination of whether the castle doctrine version of self-defense applied.

**Ground Four**: The eleven year prison term is contrary to law and not supported by the record.

> **Supporting Facts**: The Court did not consider proportionality of sentence at all. The fact remains that the victim entered Petitioner's residence without permission at 10:30 p.m. at night and was in the process of chocking Ms. Ross when Mr. Cooke came upon the scene from his bedroom. The facts herein did not cause for a eleven (11) year term of incarceration.

(ECF No. 1.)

The Warden filed a Return of Writ on February 9, 2022. (ECF No. 5.) Petitioner filed two motions for extension of time to file his traverse (ECF Nos. 6, 7), which I granted in an order dated September 7, 2022. (Non-document order dated September 7, 2022). That order stated that Mr. Cooke's traverse was due on or before October 6, 2022, and that no further extensions would be permitted. (*Id.*) To date, Mr. Cooke has not filed a traverse in this matter.

## IV.    STANDARDS OF REVIEW AND GOVERNING LAW

### A.  <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Cuyahoga County Court of Common Pleas sentenced Mr. Cooke, and the Court takes judicial notice that Cuyahoga County is within this Court's geographic jurisdiction. Accordingly, this Court has jurisdiction over Mr. Cooke's § 2254 petition.

### B.  <u>Exhaustion and Procedural Default</u>

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

11

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000). A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

If a procedural default has occurred, the default can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C.     Cognizable Federal Claim

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A

petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan*, No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)). Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

**D.    AEDPA Standard of Review**

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.*

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst*, 501 U.S. at 804 ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous"—it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C.

14

§ 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet . . . because it is meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## B.  ANALYSIS

### 1. All of Mr. Cooke's claims are time-barred

The Warden first argues that Mr. Cooke's habeas petition is barred in its entirety because he failed to file the petition within the applicable statute of limitations. I agree.

AEDPA imposes a one-year statute of limitations upon all applications seeking a writ of habeas corpus. See 28 U.S.C. § 2244(d)(1). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petitioner's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). The one-year limitations period begins to run from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *See Lawrence v. Florida*, 549 U.S. 327, 333 (2007). However, "[t]he one-year period of limitations is tolled during the time that a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" *Keeling v. Warden*, Lebanon Corr. Inst., 673 F.3d 452, 459 (6th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)).

Here, the Ohio Supreme Court declined to accept jurisdiction of Mr. Cooke's appeal on September 1, 2020. Following that denial, Mr. Cooke had 90 days to file a petition for a writ of certiorari to the U.S. Supreme Court. See Sup. Ct. R. 13. He did not do so, and his conviction became final on November 30, 2020. The AEDPA statute of limitations began running the next day, which means that Mr. Cooke had until December 1, 2021, to file his habeas petition. However,

he did not file his habeas petition until December 3, 2021. Mr. Cooke's petition is therefore untimely unless some form of tolling applies.

Because AEDPA's one-year statute of limitations is not jurisdictional, a court may still entertain an untimely petition if the petitioner is entitled to equitable tolling. *See Holland v. Florida,* 460 U.S. 631, 635 (2010). If a petitioner seeks equitable tolling, he must show that: (1) he pursued his rights diligently, and (2) some extraordinary circumstances stood in his way and prevented timely filing. *Robinson v. Simpson,* 624 F.3d 781, 784 (6th Cir. 2010) (citing *Holland,* 560 U.S. at 649); *Keeling,* 673 F.3d at 673 F.3d at 462.

Here, Mr. Cooke asserts in his petition that it is timely but does not explain how. (ECF No. 1). Moreover, Mr. Cooke did not file a traverse and did not respond to the Warden's argument that his petition is untimely and equitable tolling is not applicable here. In any event, Mr. Cooke is unfortunately mistaken about the deadline to file a petition for a writ of certiorari, which was 90 days after the Ohio Supreme Court declined to exercise jurisdiction over the appeal.

Mr. Cooke's misunderstanding of the applicable deadline does not provide a basis to equitably toll the statute of limitations. *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) ("Even if [petitioner] lacked actual knowledge of the relevant provisions of AEDPA, this court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling.'"); *Taylor v. Palmer*, 623 F. App'x 783, 789 (6th Cir. 2015) ("It is well-settled, however, that a mistaken belief in calculating the statute of limitations does not constitute an extraordinary circumstance sufficient to warrant equitable tolling.") (citing *Lawrence*, 549 U.S. at 336-37).  And Mr. Cooke's pro se status and lack of legal training are similarly insufficient to warrant equitable tolling. *See, e.g.*, *Keeling*, 673 F.3d at 464 ("Keeling's pro se status and lack of knowledge of the law are not sufficient to constitute and extraordinary circumstance and to excuse his late filing.");

17

*Burden v. Bunting*, No. 5:15 CV 00967, 2016 WL 541783, at \*6 (N.D. Ohio July 15, 2016) ("Courts have uniformly held that neither a prisoner's pro se status nor his lack of knowledge of the law constitute extraordinary circumstances justifying equitable tolling.").

There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins,* 569 U.S. 383, 386 (2013). This exception is concerned with actual – as opposed to legal – innocence and must be based on reliable evidence not presented at trial. *See Schlup,* 513 U.S. at 324; *Calderon v. Thompson,* 523 U.S. 538, 539 (1998). In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324. The actual innocence exception "applies to a severely confined category: cases in which new evidence show 'it is more likely than not that no reasonable juror would have convicted [the petitioner]." *McQuiggin,* 569 U.S. at 395 (quoting *Schlup,* 513 U.S. at 329).

Here, Mr. Cooke has not presented this Court with any new, credible evidence demonstrating actual innocence. And as noted above Mr. Cooke did not file a traverse and did not respond to the Warden's timeliness argument, much less advance an actual innocence claim.[4] Accordingly, Mr. Cooke has not established he is entitled to equitable  tolling because he has not met his burden of establishing that any of his grounds for relief are timely.  I therefore recommend that the Court dismiss Mr. Cooke's petition as time-barred.  In an abundance of caution, however,

---

[4] And even if Mr. Cooke had sought to establish actual innocence based on self-defense, this argument lacks merit because it is premised on *legal* innocence, not *factual* innocence. *Harvey v. Jones,* 170 Fed. App'x 294, 298-99 (6th Cir. 2006) (rejecting petitioner's argument that he was actually innocent based on self-defense and holding this was a legal innocence claim) (citing *Ellis v. Hargett*, 302 F.3d 1182, 1186 n.1 (10th Cir. 2002) (finding that the actual innocence exception did not apply to petitioner's claim that he is legally innocent because his conduct was justified by the doctrine of self-defense, on which the jury was not accurately instructed); *Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000) (rejecting as arguments going to legal innocence petitioner's claim that he was not guilty of first degree murder because he was intoxicated and acted in self-defense)).

I will analyze Mr. Cooke's claims on the merits as well.

### 2.     Ground One lacks merit

Mr. Cooke argues in his Ground One claim that his plea was not knowingly, voluntarily, and intelligently given because "he was not informed that a guilty plea waived his right to self-defense." (ECF No. 1, PageID # 5.) In support of this argument, Mr. Cooke states that he was prejudiced "by the incomplete information regarding the application of the castle doctrine and self-defense, as well the failure to advise him that a guilty plea waived his affirmative defense." (*Id.*) The Warden argues in the return of writ that that the Eighth District Court of Appeals holding is entitled to AEDPA deference. I agree,

Specifically, in rejecting the same argument Mr. Cooke advances here, the Eighth District held as follows:

> {¶ 24} In his first assignment of error, Cooke contends that his plea was not knowing, intelligent, or voluntary because the trial court failed to adequately explain the burdens of establishing self-defense, the application of it, and the castle doctrine to him as well as the fact that he was waiving the issue for purposes of appeal. He further argues that his plea was invalid because he did not receive the benefit of the bargain that the "state would recommend, and the trial court would consider, mitigatory factors when imposing the sentence."

> {¶ 25} A defendant's plea must be entered knowingly, intelligently, and voluntarily for the plea to be constitutional under the United States and Ohio Constitutions. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 107, 564 N.E.2d 474 (1990). The underlying purpose of Crim.R. 11(C) is to require the trial court to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding whether to plead guilty or no contest. *State v. Ballard*, 66 Ohio St.2d 473, 479-480, 423 N.E.2d 115 (1981).

> {¶ 26} Specifically, Crim.R. 11(C)(2) states:

> > In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 27} Trial courts must strictly comply with the provisions concerning the constitutional rights set forth in Crim.R. 11(C)(2)(c), but they only have to substantially comply with the provisions concerning nonconstitutional rights set forth in Crim.R. 11(C)(2)(a) and (b). *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474.

{¶ 28} Moreover, a defendant who challenges his or her plea on the basis that it was not knowing, intelligent, and voluntary must demonstrate prejudice. Id. at 108, 564 N.E.2d 474. A "failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice." *Griggs* at ¶ 12. The test for prejudice is "'whether the plea would have otherwise been made.' " *Id.,* quoting *Nero* at 108, 564 N.E.2d 474.

{¶ 29} The standard for reviewing whether the trial court accepted a plea in compliance with Crim.R. 11(C) is de novo. *State v. Tutt*, 2015-Ohio-5145, 54 N.E.3d 619, ¶ 13 (8th Dist.), citing *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606. It requires an appellate court to review the totality of the circumstances and determine whether the plea hearing was in compliance with Crim.R. 11(C). *State v. Cardwell*, 8th Dist. Cuyahoga No. 92796, 2009-Ohio-6827, ¶ 26, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977).

{¶ 30} Regarding Cooke's arguments with respect to self-defense and the castle doctrine, the Ohio Supreme Court has held that where criminal defendants are represented by counsel, Crim.R. 11(C) does not require trial courts to inform defendants of affirmative defenses that may be available to them prior to accepting their guilty pleas. *State v. Reynolds*, 40 Ohio St.3d 334, 533 N.E.2d 342 (1988), syllabus. Cooke maintains, however,

that the trial court's explanation regarding self-defense and the castle doctrine was inadequate, which therefore prevented him from entering a valid plea. We disagree.

{¶ 31} First, neither Cooke nor the trial court mentioned self-defense or the castle doctrine at Cooke's plea hearing on May 30, 2019. The pages of transcript that Cooke points to actually took place on the morning of the day before the plea hearing. In fact, after the discussion on May 29, 2019, the trial court brought the jury in and voir dire took place for the rest of that day. When the parties appeared before the trial court on the second day of trial the following day, Cooke informed the trial court that he changed his mind and wanted to plead guilty.

{¶ 32} Next, no part of the trial court's explanation of self-defense or the castle doctrine was incorrect. Cooke maintains, however, that the trial court "neglected to inform him" that there would be a presumption that he acted in self-defense and that the prosecution would then have to rebut that presumption. Again, we disagree. The trial court told Cooke at the hearing on May 29, 2019:

> Well, so the castle doctrine has sort of been incorporated into that self-defense defense. You know, the statute says that -- and the jurors will hear if there's evidence of this, if there's evidence that you did act in self-defense, defense of another or defense of a person's residence, your residence. If at the trial, the person who is accused of an offense, that's you, and you used some kind of force against the alleged victim, Mr. Porter, that there was evidence presented that supports that you used the force, self-defense, defense of another or defense of that person's residence that it was a reasonable amount of defense, reasonable amount of force. It's up to the state of Ohio to prove beyond a reasonable doubt that you did not use the force in self-defense, offense of another or defense of that person's residence as the case may be.

{¶ 33} The trial court adequately explained to Cooke that if the defenses were applicable after the evidence was presented at trial, the state would have the burden of proving Cooke did not act in self-defense or in the defense of another or of that person's residence.

{¶ 34} Cooke also argues that the trial court failed to inform him that where the castle doctrine applies, the defendant does not have a duty to retreat. The trial court may not have mentioned that at the May 29, 2019 hearing, but on September 6, 2018, the trial court told Cooke:

> Castle doctrine in general is basically if someone is breaking into your home, you have a right to defend yourself. You don't have to retreat. Whether or not you can beat someone to death that's in your house is a different story and I'm not sure what the facts will be here or not, but at some point defending yourself becomes an assault.

{¶ 35} Moreover, Cooke had a total of three attorneys who represented him at different times throughout the proceedings. At the outset of his case, Cooke had two public

defenders representing him. At the September 6, 2018 hearing, however, Cooke informed the trial court that he was dissatisfied with his two public defenders, in part because they would not follow his wishes and assert the castle doctrine for him. The trial court ultimately appointed new counsel for Cooke.

{¶ 36} Cooke further maintains that the trial court failed to advise him that by entering into a guilty plea, he would not be able to argue on appeal that the trial court erred when it denied his motion to dismiss based upon his claim that he acted in self-defense. Cooke acknowledges that Ohio law does not require trial courts to inform defendants that they waive their right to assert an affirmative defense when they enter a guilty plea, but he nonetheless argues that under the circumstances in this case, the trial court should have. We disagree. Again, Cooke was represented by counsel throughout the proceedings. We therefore see no reason to veer away from well-settled Ohio law.

{¶ 37} Finally, Cooke argues that his plea was invalid because he did not receive the benefit of his plea bargain. At the beginning of his plea hearing, the state told the court that it and Cooke agreed that he "should receive consideration by the court at the time of sentencing" for taking responsibility and for "relieving these children [who witnessed the event] of not having to come into court and testify about the events that they witnessed as well." The state and Cooke, however, did not recommend a jointly agreed-upon sentence to the trial court. The trial court also made sure that Cooke understood at the plea hearing that it was not promising him "any particular sentence."

{¶ 38} At the sentencing hearing, the state outlined what occurred in this case and stated, "The plea offer in the case and what the defendant pled to reflects the mitigatory factors of this circumstance, but in no means diminishes the seriousness of the offense." The trial court stated that it considered all of the information that was presented at the sentencing hearing as well as the principles and purposes of sentencing and the seriousness and recidivism factors. The court then discussed the seriousness of the beating that Cooke inflicted upon the victim. The court also noted that Cooke's previous criminal history included five prior violent convictions, two prior weapons convictions, and participation in a crime that resulted in someone's death. The court stated, "Now it's happened again." After review, we find no merit to Cooke's assertion that he did not receive the benefit of his bargain.

*State v. Cooke,* 2020-Ohio-2725, 2020 WL 207190, ¶¶ 24-38.

Habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst*, 501 U.S. at 805, 111 S.Ct. 2590 (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

Here, the Eighth District Court of Appeals reasonably determined on Mr. Cooke's direct appeal that his plea was knowing, intelligent, and voluntary. Specifically, as set forth above, the Eighth District found that the trial court was not required to inform Mr. Cooke of affirmative defenses such as self-defense and the castle doctrine that may be available to him prior to accepting his guilty plea. Even so, the Eighth District nevertheless rejected Mr. Cooke's claim that the trial court's allegedly incorrect explanation about these affirmative defenses at the change of plea hearing prevented him from entering a valid plea. In fact, the Eighth District noted that neither Mr. Cooke nor the trial court mentioned self-defense or the castle doctrine during the plea hearing on May 30, 2019; rather, the discussion about these affirmative defenses took place on May 29, 2019, before the commencement of voir dire. And the Eighth District further held that no part of the trial court's explanation about these affirmative defenses was because the trial court explained to Mr. Cooke on May 29, 2019, that – if the defenses were applicable after the evidence was presented at trial – the state would have the burden of proving Mr. Cooke did not act in self-defense or the defense of another at that person's residence. Finally, the Eighth District held that the trial court informed Mr. Cooke on September 18, 2018, that there was no duty to retreat if the castle doctrine applied – but the trial court further noted that "[w]hether or not you can beat someone to death that's in your house is a different story and I'm not sure what the facts will be here or not, but at some point defending yourself becomes an assault."

Mr. Cooke fails to cite to any clearly established Supreme Court law holding that a trial court's failure to advise a defendant of the availability of self-defense or the waiver of self-defense violates a defendant's constitutional rights. *Phillips v. Lazaroff,* No. 3:14-CV-1824. 2016 WL 8674618, at *9 (N.D. Ohio Jan. 22, 2016) ("Petitioner offers no legal authority that is sufficient to merit habeas relief to support his claim that the trial court's alleged failure to advise him regarding

the availability of the insanity defense violated his constitutional rights."), report and recommendation adopted, 2016 WL 537474, at *4 (N.D. Ohio Feb. 11, 2016); *see also United States v. Broce,* 488 U.S. 563, 573 (1989) ("[o]ur [Supreme Court] decisions have not suggested that conscious waiver is necessary with respect to each potential defense relinquished by a plea of guilty. Waiver in that sense is not required.")

Applying AEDPA deference, the Eighth District Court of Appeals' holding is not contrary to or an unreasonable application of clearly established federal law. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings for the reasons discussed above. Accordingly, I recommend that the Court find that Ground One lacks merit.

### 3. Ground Two: Speedy Trial

Mr. Cooke argues in his Ground Two claim that he was deprived of his constitutional right to a speedy trial because trial did not occur within the 90 days required by Ohio statute and, in fact, 466 days had passed. The Warden argues that Mr. Cooke is not entitled to relief on the merits of his speedy trial claim because he has not demonstrated that the Eighth District Court of Appeals' decision involved an unreasonable application of *Barker v. Wingo,* 407 U.S. 514, 518 (1972), or an unreasonable determination of the facts. I agree.

As a threshold matter, to the extent that Mr. Cooke argues that his statutory right to a speedy trial under Ohio law was violated, this claim is not cognizable on federal habeas review because it a question of state law. *See Phillips v. Schweitzer*, No. 3:18-cv-02556, 2020 WL 9889893, at *9 (N.D. Ohio Nov. 10, 2020), *report and recommendation adopted*, 2021 WL 2101820 (N.D. Ohio May 24, 2021) ("nor does an alleged violation of Ohio's speedy trial statute present a cognizable federal habeas claim"); *Smith v. Warden, Pickaway Corr. Inst*., No. 1:18-cv-335, 2019 WL

2774258, at *4 (S.D. Ohio July 2, 2019), *report and recommendation adopted,* 2020 WL 1042449 (S.D. Ohio Mar. 4, 2020) ("[B]ecause the federal habeas court only has jurisdiction to consider whether petitioner's confinement violates the Constitution, laws or treaties of the United States, petitioner is unable to prevail on any claim of error under Ohio's speedy-trial statute or state case law interpreting the Ohio statute.").

And in rejecting the federal constitutional speedy trial argument that Mr. Cooke advances here, the Eighth District Court of Appeals held:

{¶ 41} The right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, made obligatory on the states by the Fourteenth Amendment. The Ohio Constitution, Article I, Section 10, guarantees an accused this same right. *State v. MacDonald*, 48 Ohio St.2d 66, 68, 357 N.E.2d 40 (1976). Although the United States Supreme Court declined to establish the exact number of days within which a trial must be held, it recognized that states may prescribe a reasonable period of time consistent with constitutional requirements. *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

{¶ 42} In examining a constitutional claim on speedy-trial grounds, the statutory time requirements of R.C. 2945.71 to 2945.73 are not relevant; instead, courts should employ the balancing test enunciated by the United States Supreme Court in *Barker*. Under the *Barker* test, courts must consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his or her right to a speedy trial; and (4) the prejudice to the defendant. *Id.* at 530-532, 92 S.Ct. 2182.

{¶ 43} The first factor, the length of the delay, is the "triggering mechanism" that determines the necessity of inquiry into the other factors. *Barker* at 530, 92 S.Ct. 2182. Until there is some delay that is presumptively prejudicial, "there is no necessity for inquiry into the other factors that go into the balance." *Id.* Generally, one year is considered sufficient to trigger the inquiry. *State v. Triplett*, 78 Ohio St.3d 566, 569, 679 N.E.2d 290 (1997), citing *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed. 2d 520 (1992), fn 1. In this case, Cooke was arrested and indicted in February 2018. He did not enter into his plea until May 30, 2019. Thus, Cooke met the threshold requirement of delay sufficient to trigger the inquiry.

{¶ 44} The second factor is the state's reason for the delay. The weight assigned to this factor depends on the degree of the government's fault. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101. In this case, Cooke moved for a continuance eight times before moving to disqualify his two public defender in July 2018. The trial court warned him at the hearing on his motion on September 6, 2018, that if it granted his request, the proceedings would be delayed even more. Cooke still wished for new counsel. After new

counsel was appointed, Cooke again moved for a continuance at least eight times. The state only moved for a continuance one time when its key witness was not available. Accordingly, we find that most of the delay was due to Cooke's own actions. Although Cooke contends that he did not consent to any of the continuances, he is bound by his counsel's requests for a continuance. *State v. Taylor*, 98 Ohio St.3d 27, 2002-Ohio-7017, 781 N.E.2d 72, ¶ 33, citing *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 593 (1978). Cooke further asserts that some of his counsel's requests were not reasonable, but he does not explain which ones were unreasonable or give any explanation as to how or why they were unreasonable. Thus, the second factor under Barker weighs heavily against Cooke.

{¶ 45} The third *Barker* factor deals with whether Cooke asserted his right to a speedy trial. In discussing this factor, the Barker court explained: "The defendant's assertion of his speedy trial right * * * is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he [or she] was denied a speedy trial." Id. at 531-532, 92 S.Ct. 2182. Here, Cooke only mentioned the issue of speedy trial at the hearing on September 6, 2018, when the court was addressing his motion to disqualify counsel. He never filed a motion to dismiss based upon lack of speedy trial and never raised the issue to the court a second time. Accordingly, we do not give this factor any weight in Cooke's favor.

{¶ 46} Finally, the last *Barker* factor considers the prejudice to the defendant. Cooke contends that he suffered prejudice from the delay "as he remained incarcerated throughout the proceedings on a $1,000,000.00 bond [that] prevented him from access to resources outside of the jail, including his ability to investigate and obtain potentially exculpatory evidence[,] and he was precluded from being able to more fully assist in his defense." Cooke's prejudice argument lacks merit, however, because no matter how long the delay, the bond would have still been $1,000,000. Cooke has not affirmatively shown how the delay in this case prejudiced him. Thus, we afford this factor no deference.

{¶ 47} After weighing the *Barker* factors, we find that Cooke's constitutional speedy-trial rights were not violated and overrule his second assignment of error.

*State v. Cooke,* 2020-Ohio-2725, 2020 WL 207190, ¶¶ 41-47.

As set forth above, habeas courts review the "last *explained* state-court judgment" on the federal claim at issue. *Ylst*, 501 U.S. at 805, 111 S.Ct. 2590 (emphasis original). A state court has adjudicated a claim "on the merits," and AEDPA deference applies, regardless of whether the state court provided little or no reasoning at all for its decision. *Harrington v. Richter*, 562 U.S. 86, 99, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).

Here, the Eighth District Court of Appeals reasonably determined after weighing the *Barker* factors that Mr. Cooke's constitutional speedy trial rights were not violated. Specifically, applying the *Barker* factors, the Eighth District found: (1) as to the first factor, Mr. Cooke met the threshold inquiry of delay sufficient to trigger the speedy trial inquiry; (2) as to the second factor, most of the delays were due to Mr. Cooke's own actions; (3) as to the third factor, Mr. Cooke mentioned the issue of speedy trial only once at the hearing to disqualify counsel on September 6, 2018, never filed a motion to dismiss based upon lack of speedy trial, and never raised the issue to the trial court a second time; and (4) as to the last factor, Mr. Cooke did not experience prejudice because his bond still would have been $1,000,000.

Applying AEDPA deference, the Eighth District Court of Appeals' holding is not contrary to or an unreasonable application of clearly established federal law. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, I recommend that the Court find that Ground Two lacks merit.

### 4.      Ground Three lacks merit

Mr. Cooke argues in his Ground Three claim that the trial court erred by denying his motion to dismiss based on self-defense. Specifically, Mr. Cooke argues that R.C. 2905.01(B)(2) could allow for a pre-trial determination of whether the castle doctrine version of self-defense applied, and as a result the trial court's ruling that the motion to dismiss was untimely or premature was incorrect. The Warden argues that Mr. Cooke waived this claim by entering a guilty plea. I agree.

The U.S. Supreme Court has recognized that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred

prior to the entry of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 266–67 (1973)); *see also U.S. v. Stiger,* 20 Fed. App'x 307, 309 (6th Cir. 2001).

In rejecting the same argument Mr. Cooke advances here in his Ground Three claim, the Eighth District Court of Appeals held:

> {¶ 48} In his third assignment of error, Cooke contends that the trial court erred when it denied his pretrial motion to dismiss based upon self-defense, which he filed in March 2019.
>
> {¶ 49} Cooke waived this argument, however, when he pleaded guilty to voluntary manslaughter. *See State v. Albright*, 8th Dist. Cuyahoga No. 107632, 2019-Ohio-1998, ¶ 36 ("By pleading guilty to voluntary manslaughter and felonious assault, Albright waived his right to claim that his actions were in self-defense."); *State v. Wright*, 8th Dist. Cuyahoga No. 98345, 2013-Ohio-936, ¶ 19 ("By pleading guilty, a defendant waives all appealable orders except for a challenge as to whether the defendant made a knowing, intelligent, and voluntary acceptance of the plea."); *State v. Yodice*, 11th Dist. Lake No. 2001-L-155, 2002 WL 31895121, 2002 Ohio App. LEXIS 7163 (Dec. 31, 2002), citing *State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992) ("By pleading guilty, appellant has waived his right to challenge the court's ruling on his motion to dismiss.").
>
> {¶ 50} Accordingly, we overrule Cooke's third assignment of error.

*State v. Cooke,* 2020-Ohio-2725, 2020 WL 207190, ¶¶ 48-50.

Applying AEDPA deference, the Eighth District Court of Appeals' holding is not contrary to or an unreasonable application of clearly established federal law. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, I recommend that the Court find that Ground Three lacks merit.

### 5.    Ground Four is not cognizable on habeas review

Mr. Cooke argues in his Ground Four claim for relief that the 11-year prison term he received on the voluntary manslaughter count – the maximum sentence under the plea agreement – is contrary to law and not supported by the record. Specifically, he maintains that the trial court did not consider the proportionality of the sentence when the victim entered Mr. Cooke's home without permission at 10:30 p.m. and was in the process of choking Ms. Ross when Mr. Cooke

emerged from his bedroom onto the scene.  The Warden argues that the Ground Four claim is not cognizable on habeas review. I agree.

Mr. Cooke's Ground Four claim does not present a federal question because it plainly hinges on a matter relating to state sentencing, which is not a cognizable federal issue. It is well established that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle*, 502 U.S. at 68. As such, the Supreme Court has explained "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id.* at 67-68. *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007). Indeed, courts have consistently found that a habeas petitioner cannot challenge the interpretation and application of Ohio's sentencing laws, as "a state court's interpretation and application of Ohio's sentencing laws is not cognizable in a federal habeas corpus action." *Croce v.  Miller*, No. 1:15-cv-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017) (citing *Howard v. White*, 2003 WL 22146139, at *2 (6th Cir. 2003); *Rettig v. Jefferys*, 557 F. Supp.2d 830, 838 (N.D. Ohio 2007); *Ruffin v. Lazaroff*, No. 5:15CV2718, 2016 WL 7974123 at *6 (N.D. Ohio Nov. 1, 2016); *Linde v. Turner*, No. 5:14-CV-2799, 2016 WL 1275729 at *8 (N.D. Ohio March 4, 2016); *Rossbach v. Turner*, No. 3:13-cv-552, 2015 WL 3953063 at *10 (N.D. Ohio June 29, 2015)).

And even if the trial court erred under state law in sentencing Mr. Cooke, any such errors are a *state law* issue, which is beyond the jurisdiction of this Court. *See Howell v. Tibbles*, No. 1:11-CV-02029, 2013 WL 2337977, at *11 (N.D. Ohio May 28, 2013) ("[W]hether the trial court erred under state law by failing to engage in judicial factfinding before sentencing [petitioner] to consecutive sentences, by itself, is a question beyond the jurisdiction of this court."). Significantly, Mr. Cooke has not asserted his sentence falls outside the statutory range. Courts have consistently

29

held that "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *Croce,* 2017 WL 3394046, at *22; *see also Kerr v. Smith,* No. 3:07 CV 2990, 2009 WL 88054, at *15 (N.D. Ohio Jan. 12, 2009) ("Claims which arise out of a state trial court's sentencing decision are not generally cognizable upon federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law."); *Rossbach,* 2015 WL 3953063 at *3 ("It is well settled that a sentence that falls within the penalty set by statute normally does not violate the United States Constitution.")

Accordingly, I recommend that this Court dismiss and/or deny Mr. Cooke's Ground Four claim as non-cognizable because the Eighth District Court of Appeals' determination that there was no sentencing error is "axiomatically correct on habeas review." *Adrianson v. Howard*, No. 1:20-cv-952, 2021 WL 3518649, at *5 (W.D. Mich. July 12, 2021), report and recommendation adopted 2021 WL 3510778 (W.D. Mich. Aug. 10, 2021).

## RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY

### A.  Legal Standard

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant

to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)).  The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

### B.  Analysis

Mr. Cooke has not made a substantial showing of a denial of a constitutional right for the reasons set forth above. Because jurists of reason would not find this conclusion to be debatable, I recommend that no Certificate of Appealability issue in this case.

## II.  RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Cooke's petition for writ of habeas corpus under 28 U.S.C. § 2254. I also RECOMMEND that the Court not grant him a Certificate of Appealability. Finally, I also recommend that Warden George A. Fredrick should be substituted for Warden Leon Hill as the Respondent in this case.

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates

Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

Dated: April 23, 2024

       *s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge